**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT ASHLAND**

**CIVIL ACTION NO. 14-7-DLB**

**JAMES F. CASSITY**                                                              **PLAINTIFF**

vs.                     **MEMORANDUM OPINION & ORDER**

**CAROLYN W. COLVIN, Commissioner
SOCIAL SECURITY ADMINISTRATION**                          **DEFENDANT**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security. The Court, having reviewed the record and for the reasons set forth herein, hereby reverses and remands the decision of the Commissioner.

## I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff James Cassity filed an application for disability insurance benefits on November 16, 2010, alleging disability as of May 7, 2010. (Tr. 19). Plaintiff's application was denied initially and upon reconsideration. (*Id.*) On August 8, 2012, Administrative Law Judge Andrew J. Chwalibog conducted an administrative hearing at Plaintiff's request. (*Id.*) On September 14, 2012, the ALJ issued a partially favorable decision, finding that Plaintiff was not disabled prior to March 3, 2012, but became disabled from that point on. (Tr. 29). This decision became the final decision of the Commissioner when the Appeals Council denied review on November 27, 2013. (Tr. 1).

1

On January 13, 2014, Plaintiff filed the instant action. (Doc. # 1). This matter has culminated in cross-motions for summary judgment, which are now ripe for adjudication. (Docs. # 12, 13).

## II. DISCUSSION

### A. Overview of the Process

Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *See Cutlip v. Sec'y of Health & Human Servs.,* 25 F.3d 284, 286 (6th Cir. 1994). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* Courts are not to conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *Id.* Rather, we are to affirm the Commissioner's decision, provided it is supported by substantial evidence, even if we might have decided the case differently. *See Her v. Comm'r of Soc. Sec.,* 203 F.3d 388, 389-90 (6th Cir. 1999).

The ALJ, in determining disability, conducts a five-step analysis. Step 1 considers whether the claimant is still performing substantial gainful activity; Step 2, whether any of the claimant's impairments are "severe"; Step 3, whether the impairments meet or equal a listing in the Listing of Impairments; Step 4, whether the claimant can still perform her past relevant work; and Step 5, whether significant numbers of other jobs exist in the national economy which the claimant can perform. At the last step, the burden of proof shifts from the claimant to the Commissioner. *See Jones v. Comm'r of Soc. Sec.,* 336 F.3d 469, 474 (6th Cir. 2003); *Preslar v. Sec'y of Health & Human Servs.,* 14 F.3d 1107, 1110

(6th Cir. 1994).

## B. The ALJ's Determination

As noted above, the ALJ's decision was partially favorable, finding that Plaintiff was not disabled prior to March 3, 2012, but became disabled from that point on. (Tr. 29). The reason for the ALJ's split decision is that Plaintiff's birthday is March 4, 1957, and, after turning fifty-five (55) years old, he became a "person of advanced age" under the medical-vocational guidelines. (Tr. 27); *see* 20 C.F.R. § 404.1563 (defining an individual of advanced age as "55 or older"). Also, upon Plaintiff's fifty-fifth birthday, the ALJ adjusted his residual functional capacity (RFC) from having no exertional limitations to being restricted to light work, as defined in 20 C.F.R. § 404.1567(b). (Tr. 26). Due to these changes, Plaintiff satisfied the criteria of Rule 202.04 beginning on March 3, 2012, and the ALJ was therefore required to find that Plaintiff became disabled as of that date.[1] (Tr. 29). Of course, Plaintiff does not challenge this finding on appeal. Accordingly, the Court will only address the ALJ's disability determination prior to March 3, 2012.

At Step 1, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset of his disability. (Tr. 21). At Step 2, the ALJ found that Plaintiff had the following "severe" impairments: borderline intellectual functioning; mild speech

---

[1] Pursuant to Rule 202.04, a claimant is disabled if he is a person of advanced age with the ability to perform light work, has an education of "high school graduate or more," and has no or unskilled previous work experience. 20 C.F.R., Part 404, Subpt. P, App. 2, Table 2. In addition to finding that Plaintiff was 55 years old and limited to performing light work beginning on March 3, 2012, the ALJ also found that Plaintiff had a high school degree and that his previous work experience was unskilled. (Tr. 27). Based on these findings, the ALJ properly concluded that Plaintiff satisfied all the criteria of Rule 202.04 and was therefore disabled. (Tr. 28); *see Wright v. Massanari*, 321 F.3d 611, 615 (6th Cir. 2003) ("In general, where the characteristics of the claimant exactly match the characteristics in one of the rules, the grid determines whether significant numbers of other jobs exists for the person or whether that person is disabled.").

impediment; residuals of cerebral palsy; and depression. (*Id.*) The ALJ also found that Plaintiff's high blood pressure and cholesterol were non-severe. (*Id.*)

At Step 3, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments listed in, or medically equal to an impairment listed in 20 C.F.R. Part 404, Subpt. P, App. 1. (Tr. 22-24). Specifically, the ALJ found that Plaintiff does not meet the requirements of Listing 11.07 (cerebral palsy) because he achieved a full-scale IQ score of 74 and earned a college degree. (Tr. 22-23). Further, the ALJ noted that the record supported only a mild speech impairment and contained no evidence of gait disturbance, joint abnormality or neurological deficit. (*Id.*) The ALJ also found that Plaintiff does not meet the requirements of Listings 12.02 (organic mental disorders) or 12.04 (affective disorders) because he did not satisfy the paragraph B criteria; i.e., he failed to demonstrate that his mental impairments resulted in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. (Tr. 23-24).

At Step 4, the ALJ concluded that *prior to* March 3, 2012, Plaintiff had the RFC to perform work at all exertional levels, subject to the following non-exertional limitations:

> The claimant can understand, remember, and carry out short and simple instructions and tasks but not more detailed or complex tasks; can maintain attention sufficiently for simple tasks without the need for special supervision or more than usual and customary rest breaks; is capable to infrequent appropriate social interactions with the public and authority figures and the supervisory environment should be non-confrontational; is capable to maintaining schedules and attendance; changes in the work environment or expectations should be introduced gradually; and he can set simple and short-term realistic work goals but cannot do any production paced jobs.

(Tr. 24). Based on this assessment, the ALJ concluded that Plaintiff was unable to perform

4

any past relevant work since May 7, 2011, the alleged onset date of disability. (Tr. 27).

Proceeding to the fifth and final step of the analysis, the ALJ found that *prior to* March 3, 2012, there were a significant number of other jobs in the national economy that Plaintiff could perform. (Tr. 27). The ALJ based this conclusion on testimony from a vocational expert (VE), in response to a hypothetical question assuming an individual of Plaintiff's age, education, work experience, and RFC. (Tr. 28). The VE testified that an individual with Plaintiff's vocational profile and RFC would be able to perform the requirements of unskilled work at all exertional levels. (*Id.*) The VE provided examples in both the regional and national economies, noting that Plaintiff could work at the heavy level as a freight handler (41,000 jobs regionally and 500,000 jobs nationally); at the medium level as a dishwasher (20,000 jobs regionally and 366,000 jobs nationally); at the light level as an assembler (5,000 jobs regionally and 78,000 jobs nationally); and at the sedentary level as an inspector (4,000 jobs regionally and 75,000 jobs nationally). (*Id.*)

Based on the testimony of the VE and Plaintiff's age, education, work experience, and RFC, the ALJ found that Plaintiff is capable of making a successful adjustment to other work and thus concluded that he did not have a "disability" as defined under the Social Security Act. (*Id.*)

**C.  Analysis**

Plaintiff presents three arguments on appeal. First, he contends that the ALJ erred in finding that he does not satisfy the criteria of Listing 12.05C. Second, he insists that the ALJ improperly ignored his treating physician's medical opinion when assessing his RFC prior to March 3, 2012. And third, because the opinion of his treating physician was disregarded, Plaintiff submits that the hypothetical question posed to the VE at Step 5 was

5

inaccurate.

### 1. The ALJ's finding that Plaintiff's borderline intellectual functioning does not satisfy Listing 12.05C is supported by substantial evidence.

If a claimant's impairment matches or is "equal" to one of the impairments listed in Appendix 1, "he qualifies for benefits without further inquiry." *Sullivan v. Zebley*, 493 U.S. 521, 525 (1990). It is, however, the claimant's burden to make this showing. *Jones*, 336 F.3d at 474. And for an impairment to match or equal a listing, "it must meet *all* of the specified medical criteria." *Sullivan*, 493 U.S. at 530 (emphasis in original); *see also Elam ex rel. Golay v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) ("It is insufficient that a claimant comes close to meeting the requirements of a listed impairment.").

In order to demonstrate an intellectual disability under 12.05C, a claimant must prove each of the following: (1) that he experiences "significantly subaverage general intellectual functioning with deficits in adaptive functioning that initially manifested during the developmental period" (i.e., the diagnostic description); (2) that he has a "valid verbal, performance, or full scale IQ of 60 through 70"; and (3) that he suffers from "a physical or other mental impairment imposing an additional and significant work-related limitation of function." *West. v. Comm'r Soc. Sec. Admin.*, 240 F. App'x 692, 697-98 (6th Cir. 2007) (quoting 20 C.F.R. Part 404, Subpt. P, App. 1, § 12.05C).[2]

---

[2] Listing 12.05C, which has replaced the term "mentally retarded" with "intellectual disability," provides, in pertinent part, as follows:

> Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B,

As a threshold matter, the Court recognizes that the ALJ never explicitly addressed 12.05C during Step 3 of the sequential process. Despite Plaintiff's assertion to the contrary, the Court does not see this omission as a basis for remand. (Doc. # 12-1 at 10-11). An ALJ is not required to consider every listing; after all, there are over a hundred listings in total. *Sheeks v. Comm'r of Soc. Sec. Admin.*, 544 F. App'x 639, 641 (6th Cir. 2013). In general, if there is a "substantial question as to whether [the claimant] could qualify as disabled," that listing should be addressed. *Id.* (citing *Abbott v. Sullivan*, 905 F.2d 918, 925 (6th Cir. 1990)). However, "the ALJ need not discuss listings that the applicant clearly does not meet, especially when the claimant does not raise the listing before the ALJ." *Id.*

Here, the ALJ examined three listings: 11.07 (cerebral palsy), 12.02 (organic mental disorders) and 12.04 (affective disorders). As the Court will explain in detail below, the ALJ's factual findings with respect to each of these listings also strongly suggest that Plaintiff does not have deficits in adaptive functioning. As a result, the ALJ could have reasonably decided that 12.05C did not raise a substantial question as to whether Plaintiff was disabled, and this finding would be consistent with the ALJ's general conclusion that "[Plaintiff] does not have an impairment or combination of impairments equal in severity to *any* listed impairment." (Tr. 24) (emphasis added). The ALJ's decision not to specifically address 12.05C is also supported by Plaintiff's failure to raise this issue during the

---

C, or D are satisfied.

C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.

7

administrative hearing. For these reasons, the Court finds that it was not legal error for the ALJ to omit 12.05C from his analysis at Step 3.

Concerning the merits, Plaintiff argues that he satisfies 12.05C "as a result of his valid Performance IQ score of 70 and his additional severe impairments [of] 'residuals of Cerebral Palsy' including slow motor skills, club foot, speech impairment and depression/anxiety." (Doc. # 12-1 at 8). In support, Plaintiff notes that he required "frequent encouragement" and "repeated training" at work, and that his former supervisor constantly had to recheck his tasks. (*Id.*) Plaintiff also emphasizes Dr. Haziq's remark that his "balance and ambulation were affected by his club foot and leg length discrepancy," and Ms. Kolenda's opinion that his speech impediment would limit social and vocational functioning.[3] (*Id.*) Finally, Plaintiff criticizes the ALJ for ignoring his performance I.Q. score and referring instead to his full scale score of 74. (*Id.* at 8-10). Plaintiff cites several decisions that were remanded for denying claimants whose lowest score fell within the 60-70 range. (*Id.*)

Although some of Plaintiff's arguments are well-taken, he must meet *all* the criteria of Listing 12.05C. *Sullivan*, 493 U.S. at 530. Thus, regardless of Plaintiff's performance I.Q. score of 70, or the additional and severe impairments he claims to have, if there is substantial evidence that he does not satisfy any one of the required criteria, the ALJ's decision must be affirmed. Here, the Court finds that Plaintiff does not have deficits in adaptive functioning, as is required under the first prong of Listing 12.05C.

---

[3] Dr. Haziq is a consultative examiner who examined Plaintiff on March 30, 2011. (Tr. 409). Kara S. Kolenda is a speech-language pathologist who examined Plaintiff on April 25, 2011. (Tr. 417).

8

Adaptive functioning refers to a claimant's effectiveness in areas such as social skills, communication and daily living skills. *West*, 240 F. App'x at 698. At Step 3, the ALJ made numerous factual findings relevant to these areas. (Tr. 23). For instance, with respect to daily living skills, the ALJ emphasized that Plaintiff lives alone and can prepare simple meals; and while he pays for someone to do household chores, he handles his own personal grooming and hygiene. (*Id.*) The ALJ noted further that Plaintiff has a driver's license and can utilize public transportation, as well as a telephone. (*Id.*) As to social skills, the evidence is even stronger. The ALJ observed that Plaintiff volunteers with his church and attends services regularly, and has reported no problems socializing with other church members. (*Id.*) This is consistent with Plaintiff's mental health records, which indicate that he interacts appropriately in group settings. (*Id.*) The ALJ also noted that Ms. Fife described Plaintiff as pleasant and cooperative,[4] and Plaintiff's sister reported that he enjoys visiting with people in social settings. (*Id.*) Finally, regarding communication, although Ms. Kolenda observed a mild speech impairment, she opined that Plaintiff's articulation and fluency of speech were 100 percent accurate at all times. (Tr. 22).

Despite the fact that the ALJ never explicitly addressed 12.05C, the findings discussed above provide substantial evidence that Plaintiff does not have deficits in adaptive functioning. Accordingly, the Court will uphold the ALJ's conclusion that Plaintiff did not satisfy the criteria of any listed impairment, including Listing 12.05C.

---

[4] Leslie Fife, M.S., conducted Plaintiff's psychological evaluation, which included his I.Q. test, in July 2010. (Tr. 337).

> **2. The ALJ erred by disregarding Dr. Weigel's medical opinion when assessing Plaintiff's RFC *prior to* March 3, 2012.**

An ALJ must give a treating physician's medical opinion controlling weight in a disability benefits case if he finds that the opinion is: (1) well-supported by medically acceptable clinical and laboratory diagnostic techniques, and (2) not inconsistent with the other substantial evidence in the case record. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). If the ALJ concludes that either criterion is not met, he is required to consider the following factors in deciding how much weight to give a treating physician's opinion: "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source." *Wilson*, 378 F.3d at 544.

If an ALJ elects not to give controlling weight to a treating physician's opinion, the regulations also require him to provide "good reasons" for his decision. *Id.*; *see* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). These reasons must be based on the evidence in the record and "'be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treading source's medical opinion and the reasons for that weight.'" *Hall v. Comm'r of Soc. Sec.*, 148 F. App'x 456, 461 (6th Cir. 2005) (quoting *Wilson*, 378 F.3d at 544). This procedural safeguard "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Wilson*, 378 F.3d at 544.

Dr. Nancy Weigel has been treating Plaintiff approximately twice a year since 2008.[5] (Tr. 525-33, 516). (*Id.*) On December 22, 2011, she completed a form on Plaintiff's behalf entitled "residual functional capacity questionnaire." (Tr. 516). Within this questionnaire, she opined that Plaintiff could sit or stand/walk for only sixty (60) minutes at a time, and do either for only four (4) hours total in an eight (8) hour work day. (*Id.*) She also opined that Plaintiff could occasionally lift and carry up to 20 pounds in a competitive work situation, but no more. (Tr. 517). Dr. Weigel confirmed in the questionnaire that Plaintiff was subject to these limitations, and others, since at least 2008. (Tr. 518).

The following points should be emphasized before deciding whether the ALJ properly weighed Dr. Weigel's medical opinion. First, the ALJ's decision contains two separate RFC assessments: one that represents Plaintiff's RFC *prior to* March 3, 2012, which found no exertional limitations, and another that represents his RFC *beginning on* March 3, 2012, which found that Plaintiff was restricted to light work. The Court reiterates that only the first assessment is challenged on this appeal. Second, Dr. Weigel's finding that Plaintiff cannot lift more than 20 pounds strongly suggests that he is limited to performing light or sedentary work. *See* 20 C.F.R. § 404.1567(b) ("Light work involves lifting no more than 20 pounds at a time . . . [i]f someone can do light work, we determine that he or she can also do sedentary work."). Therefore, the Court would expect some manner of reconciliation between this finding and the ALJ's conclusion that Plaintiff had no exertional limitations prior to March 3, 2012.

---

[5] Throughout their respective briefs, both parties acknowledge that Dr. Weigel qualifies as a treating physician.

11

The ALJ's discussion of Dr. Weigel's opinion is quite brief, however. In a single paragraph, he explains that Dr. Weigel "completed a medical opinion dated December 22, 2011," and goes on to list the same exertional limitations that the Court noted above, including Plaintiff's inability to lift more than 20 pounds. (Tr. 27). The ALJ then concludes that while there is "no objective evidence to support any durational limitations on sitting and standing, the balance of [the] opinion is adopted based on the claimant's treatment history with Dr. Weigel and maximum benefit of the residual effects of Mr. Cassity's Cerebral Palsy." (*Id.*)

The above comments are the only consideration the ALJ gave to Dr. Weigel's opinion throughout the entire decision. Importantly, they are located within the ALJ's second RFC assessment; i.e., the assessment of Plaintiff's RFC *beginning on* March 3, 2012. This leaves a glaring inconsistency between Dr. Weigel's finding that Plaintiff was unable to lift more than 20 pounds since 2008, and the ALJ's conclusion that *prior to* March 3, 2012, Plaintiff's RFC was subject to no exertional limitations. The ALJ does not acknowledge this inconsistency, let alone attempt to explain it, and Dr. Weigel's opinion is completely omitted from Plaintiff's RFC assessment prior to March 3, 2012.[6] (*See* Tr. 24-26). Thus, in light of the treating physician rule, the Court finds that the ALJ did not properly weigh Dr. Weigel's medical opinion.

---

[6] The Court can only speculate as to why the ALJ would acknowledge Dr. Weigel's relevant findings when assessing Plaintiff's RFC after March 3, 2012, but not before. Perhaps the explanation is that Dr. Weigel's questionnaire was dated in December 2011, and because this was just two months before Plaintiff's fifty-fifth birthday, the ALJ reasoned it should only be considered prospectively. If this is what occurred, then the ALJ simply overlooked what the questionnaire clearly states on page three (3): that Plaintiff's limitations had been present *since at least 2008*. (Tr. 518) (emphasis added).

The Court is aware that a treating physician's opinion on issues that are reserved to the Commissioner, such as RFC, is not entitled to controlling weight or special significance.  20 C.F.R. §§ 404.1527(d), 416.927(d).  However, Dr. Weigel does not attempt to define Plaintiff's RFC; she simply states that he is unable to lift more than 20 pounds in a competitive work situation.  And regardless, Social Security Rule 96-5p provides that "opinions from any medical source on issues reserved to the Commissioner must never be ignored, and that the [ALJ's decision] must explain the consideration given to the treating source's opinion."  Thus, at a minimum, and using the factors listed in 404.1527(c) and 416.927(c), the ALJ was required to evaluate Dr. Weigel's opinion to determine whether it was medically supportable and/or consistent with the record as a whole, and to explain in his decision the consideration he gave to Dr. Weigel's finding that Plaintiff was unable to life more than 20 pounds.  See SSR 96-5p.

When an ALJ fails to comply with the treating physician rule, remand is required unless such failure amounts to harmless error.  *Wilson*, 378 F.3d at 547; *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 747 (6th Cir. 2007).  Although the Sixth Circuit has yet to define the full scope of the harmless error exception, it has explained that an ALJ's failure to comply with the procedural requirements of sections 404.1527© and 416.927© is not made harmless "simply because [the Plaintiff] appears to have had little chance of success on the merits anyway." *Wilson*, 378 F.3d 546 (quoting *Mazaleski v. Treusdell*, 562 F.2d 701, 719 n.41 (D.C. Cir. 1977)). Upon review of the record herein, the Court concludes that the ALJ, by completely disregarding Dr. Weigel's opinion in relation to Plaintiff's RFC prior to March 3, 2012, failed to comply with sections 404.1527(c) and 416.927(c), and that such error was not harmless. Accordingly, remand is required.

### 3. The hypothetical posed to the VE was inaccurate.

A VE's answer to a hypothetical question constitutes substantial evidence so long as the question accurately portrays the claimant's physical and mental impairments. *See Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002) (citing *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987)). Although a hypothetical need not make "reference to the claimant's medical conditions," it must describe "all of [the] claimant's limitations." *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004).

The hypothetical posed to the VE in this case contemplates someone from age 53 to 55 "who started off with *no exertional limitations*." (Tr. 52) (emphasis added). While it provides considerable detail regarding Plaintiff's cognitive impairments, Dr. Weigel's opinion that Plaintiff cannot lift more than 20 pounds is never mentioned. (Tr. 52-53). Due to the importance of this finding with respect to Plaintiff's vocational abilities, discussed *supra*, the Court concludes that the hypothetical is not accurate. Therefore, based on the standard articulated in *Varley*, it does not constitute substantial evidence. The Court's conclusion is not changed simply because the VE provided examples of other work at all exertional levels, including light and sedentary. Though on remand it may ultimately be found that Plaintiff could have worked in one of these positions, that determination can only properly be made after the VE has been given an accurate hypothetical.[7]

---

[7] Plaintiff also briefly argues that the hypothetical was inaccurate because it did not incorporate his testimony from the administrative hearing. (Doc. # 12-1 at 13). However, the ALJ found that Plaintiff's statements regarding the limiting effects of his impairments were not consistent with the record evidence. (Tr. 26). In support, the ALJ emphasized Plaintiff's daily activities, including volunteering with his church, working in the yard, feeding birds and staying busy in general. (*Id.*) The ALJ also noted that Plaintiff worked for nineteen (19) years as a janitor and earned a college degree. (*Id.*). In light of these observations, the Court finds that the ALJ's credibility determination was reasonable and supported by substantial evidence. *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997) (holding that an ALJ's credibility determination should be upheld "when it is supported by an adequate basis.").

### III.   CONCLUSION

This matter is remanded for administrative proceedings consistent with this opinion. On remand, the ALJ shall evaluate the medical opinion of treating physician Dr. Nancy Weigel, pursuant to the requirements of 20 C.F.R. §§ 404.1527(c), 416.927(c). Additionally, the ALJ shall consider the effect Dr. Weigel's findings might have on Plaintiff's RFC assessment *prior to* March 3, 2012, and whether the hypothetical question posed to the VE should be changed as a result.  Accordingly, for the reasons stated herein,

**IT IS ORDERED** as follows:

1.   The administrative decision of the Commissioner is hereby **REVERSED**, with this action **REMANDED**;

2.   Plaintiff's Motion for Summary Judgment (Doc. # 12) is hereby **GRANTED**;

3.   Commissioner's Motion for Summary Judgment (Doc. #13) is hereby **DENIED**; and

4.   A Judgment reversing and remanding this matter will be entered contemporaneously herewith.

This 26th day of February 2015.



Signed By:
*David L. Bunning*  DB
United States District Judge

G:\DATA\SocialSecurity\MOOs\Ashland\14-7 Cassity MOO.wpd